**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ENRIQUE LAGUNAS,

Plaintiff,

v.

NEVADA BOARD OF PRISON COMMISSIONERS, *et al.*,

Defendants.

Case No. 2:18-CV-02039-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 35]

This case involves a civil rights action filed by Plaintiff Enrique Lagunas ("Lagunas") against Defendants Rene Pena ("Pena"), Benedicto Gutierrez ("Gutierrez"), Sonya Carrillo ("Carrillo"), Frank Dreesen ("Dreesen"), Romeo Aranas ("Aranas")[2], James Dzurenda ("Dzurenda"), Brian Sandoval ("Sandoval"), Barbara Cegavske ("Cegavske"), and Adam Laxalt ("Laxalt") (collectively referred to as "Defendants").[3] Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 35.) On June 21, 2021, the Court gave Lagunas notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 39.) Despite the Court *sua sponte* granting an extension of time, (ECF No. 42), Lagunas has failed to file an opposition to

---

1 This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

2 "Aranas" is erroneously named "Aranus" in Plaintiff's complaint and the Court's Screening Order. (ECF Nos. 4, 5.)

3 The Court dismissed the claims against Dr. Francisco Sanchez without prejudice pursuant to FRCP 4(m). (ECF No. 34.) The Court dismissed defendant Nevada Board of Prison Commissioners, with prejudice, and defendants Howell, Tristan, and Jane and John Does 1-20, without prejudice. (ECF No. 4.)

the motion. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 35), be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Lagunas is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Southern Desert Correctional Center ("SDCC"). (ECF Nos. 4, 5.) On October 22, 2018, proceeding *pro se*, Lagunas filed an inmate civil rights complaint pursuant to 42 U.S.C. § 1983, ("Complaint"), seeking injunctive relief, monetary damages, costs and fees, and any other relief for events that occurred while Lagunas was incarcerated at the SDCC. (ECF Nos. 4, 5.) In accordance with 28 U.S.C. § 1915A(a), the District Court screened Lagunas's Complaint on September 30, 2019. (ECF No. 4.) The Court allowed Lagunas to proceed on one claim for Eighth Amendment deliberate indifference to serious medical needs, and dismissed, without prejudice, Lagunas's Fourteenth Amendment claim and Lagunas's Americans with Disabilities Act and Rehabilitation Act claims. (*Id.*) The Court dismissed defendant Nevada Board of Prison Commissioners, with prejudice, and defendants Howell, Tristan, and Jane and John Does 1-20, without prejudice. (ECF No. 4.)

Lagunas's Complaint alleges the following. In January 2017, Lagunas tested positive for Hepatitis C ("Hep C") while in prison. (ECF No. 4, 5.) Defendant Carrillo told Lagunas his APRI score was not high enough to be considered for treatment, which implied Lagunas would need to become sicker before qualifying for treatment. (ECF No. 4, 5.) In March 2017, Lagunas submitted an informal grievance informing Defendants Dreesen and Carrillo that failing to treat his condition would cause continued damage to his liver. (*Id.)* Defendants issued a report stating the criteria listed in Medical Directive 219, which relates to Hep C treatment, must be met for Lagunas to receive treatment. (*Id.)* Defendants told Lagunas in for his Hep C to be treated he must have: (1) an APRI score greater than 2.2; (2) sufficient time remaining on his sentence; and (3) he must display constitutional signs of Hep C. (ECF No. 5.)

Lagunas then submitted a First Level Grievance to medical regarding the Defendants subjecting Lagunas to unnecessary health risks. (ECF No. 4, 5.) Defendant Gutierrez responded that Lagunas's APRI score of 0.76 precluded him from receiving the cure but the NDOC would continue to monitor his labs. (*Id.*) Lagunas then submitted his Second Level Grievance informing the NDOC his APRI score was rising, and he was now experiencing rectal bleeding. (*Id.*) Aranas marked this grievance resolved and responded by stating that rectal bleeding is not a symptom of Hep C,[4] and Lagunas would be monitored every six months. (*Id.*) Aranas responded, "signs and symptoms of Hep C are the following[:] fatigue, nausea, loss of appetite, vomiting, ascites, and jaundice." (ECF No. 5 at 35.) Aranas's response noted Lagunas's rectal bleeding might be caused by another underlying disease and Lagunas should kite a doctor. (*Id.*)

Thereafter, Lagunas sent a kite in January of 2019, requesting the results of his blood test related to his Hep C. (ECF Nos. 5, 19.) Again, Lagunas was informed he was not considered for Hep C treatment at that time because of his APRI score, and his Hep C was "stable [and there] was no need for treatment at this time." (*Id.*) (*see* ECF No. 5 at 27.) Lagunas then sent an informal, Level 1, and Level 2 grievances requesting treatment for his Hep C, and Defendants responded that Lagunas did not qualify for treatment and the NDOC would continue to monitor Lagunas's Hep C. (ECF Nos. 5, 19.)

On June 17, 2021, Defendants filed their motion for summary judgment. (ECF No. 35.) Defendants assert they are entitled to summary judgment because: (1) Lagunas was treated appropriately and in accordance with the medical directives and standards of care; (2) Defendant Aranas and Pena were not Plaintiff's treating physician; (3) Lagunas has not been harmed by the alleged lack of treatment; (4) the members of the Board and former director are not in a position to respond to any changes in policy or procedure; (5) Defendants did not personally participate in any alleged constitutional violation; and (6)

---

[4]    The official response given on Lagunas's Level 1 Grievance stated, "So far, you have no jaundice, ascites and rectal bleeding." Implying that rectal bleeding is a symptom of Hep C. (ECF No. 5 at 33.)

Defendants are entitled to qualified immunity. (*Id.)*

**II. LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no

reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a

properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III. DISCUSSION

### A. Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Anderson*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Eighth Amendment Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and

unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429

U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care. . . ." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

**C. Analysis**

Starting with the objective element, Defendants do not dispute that Lagunas's Hep C constitutes a "serious medical need." Rather, Defendants argue that summary judgment should be granted because Lagunas cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Lagunas's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Lagunas's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Lagunas to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in*

*relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants submitted authenticated evidence regarding the medical treatment Lagunas received related to his Hep C. (*See* ECF Nos. 35-1, 35-12, 35-13, 37-2, 37-3.) According to Defendants' evidence, Lagunas spoke with a NDOC healthcare provider about his Hep C on at least five separate occasions.[5] (*See* ECF Nos. 37-2, 37-3.) Specifically, Defendants' evidence shows that Lagunas began speaking with healthcare providers at the NDOC about his Hep C on June 7, 2017.[6] (ECF No. 37-2.) Lagunas's APRI score was noted, and Lagunas's Hep C began being monitored at that time. (ECF No. 37-2 at 6.)[7] During this time, Lagunas was not provided Hep C drug intervention because Lagunas's APRI score and lack of symptoms did not qualify him for treatment under the NDOC policies at the time. (ECF Nos. 35-1, 35-10, 35-12.) Additionally, Defendants provided a declaration from current NDOC Medical Director, Dr. Michael Minev, stating, "Mr. Lagunas did not require drug intervention to treat his Hepatitis C at the time of his complaint due to his scores and lack of symptoms." (ECF 35-10.)

---

[5]    Defendants have produced authenticated progress notes indicating, within the legible portions, that someone at the NDOC had spoken to Lagunas and had monitored Lagunas's Hep C on: June 7, 2017; October 10, 2018; September 23, 2019; November 4, 2019; and April 16, 2020. (ECF Nos. 37-1, 37-2, 37-3.) There is no indication of who wrote the progress notes, i.e., a nurse, physician, or some other healthcare provider. (*Id.*)

[6]    The progress notes that were produced by Defendants are largely illegible. (ECF No. 37-2.) However, there is a legible note from June 7, 2017, indicating that Lagunas was seen for Hep C.

[7]    November 4, 2021: "[Inmate] has no jaundice, no foggy brain. . . ." "[Inmate] again educated about his APRI score. . . ." (ECF No. 37-2 at 2.)

September 23, 2019: "[Inmate] seen again for . . . Hep C. . . . [inmate] is again informed about his APRI. . . ." (ECF No. 37-2 at 3.)

October 10, 2018: "[[I]nmate] today for Chronic Clinic for Hep C." "[Inmate] is asymptomatic and the latest APRI score is 0.48." "Again [inmate] is reeducated about Hepatitis C, signs and symptoms and how to make his liver healthy. . . ." (ECF No. 37-2 at 3.)

February 12, 2018: Lagunas did not show up for his Chronic Clinic for Hep C. (ECF No. 37-2 at 4.)

June 7, 2017: "[Inmate] seen today for Chronic Clinic on his Hep C." "[S]howed an APRI score of 0.76." (ECF No. 37-2 at 6.)

Therefore, Defendants have submitted evidence that establishes Defendants affirmatively monitored Lagunas's Hep C and Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to Lagunas to produce evidence which demonstrates that an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Lagunas did not oppose the motion and did not submit any evidence in opposition to Defendants' motion. Therefore, Lagunas has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744. Moreover, to the extent that Lagunas's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Lagunas has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Lagunas fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Lagunas has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his Hep C monitored for progression. (*See* ECF Nos. 5, 19, 35-1, 35-10.)

Accordingly, the Court recommends Defendants' motion for summary judgment be granted.[8]

---

[8] The Court does not address Defendants' personal participation or qualified immunity arguments because the Court finds that Lagunas's constitutional claim fails on the merits.

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 35), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 35), be **GRANTED** and judgment entered accordingly.

**DATED**: September 17, 2021.

**UNITED STATES MAGISTRATE JUDGE**